# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

|  |  |
|---|---|
| IN RE: | C/A No. 10-03499-DD |
| Beach First National Bancshares, Inc., | Chapter 7 |
|  | **ORDER** |
| Debtor. | |

This matter is before the Court on a Motion for Relief from Stay ("Motion") filed on March 21, 2011 by numerous parties who were named as Defendants ("Movants") in a related adversary proceeding. An Objection to the Motion ("Objection") was filed by Michelle L. Vieira, the chapter 7 trustee ("Trustee"), on April 4, 2011. A hearing was held on April 19, 2011. Following the hearing, the Court granted Movants' Motion but took the matter under advisement to further consider how to fashion the relief. Pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c), the Court now makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Beach First National Bancshares, Inc. ("Debtor") filed for chapter 7 protection on May 14, 2010. Debtor was a publicly traded bank holding company. Debtor owned interests in Beach First National Bank Myrtle Beach ("Bank"), Beach First National Trust, Beach First National Trust II, and BFNM Building, LLC ("BFNM"), which owned the office building that housed the Bank. Debtor also lists over $450,000 in cash and various accounts on its Schedules. The Bank was closed in April 2010 and the FDIC was named as its receiver. The FDIC then sold or approved the sale of all of the Bank's assets. Prior to the Bank's closing and this bankruptcy filing, Movants were officers and directors of Debtor.

Debtor's Schedules disclose no real property, $3,749,235.39 of personal property, and $13,324,526.04 of unsecured debt. Debtor's only secured debt is a security agreement listing the Bank as its creditor. That debt is listed as contingent, unliquidated, and disputed.

In September 2006, Debtor purchased an insurance policy ("Policy") from The Travelers Company, Inc. ("Insurer") with an aggregate limit of $5,000,000 per policy year. This limit includes the following coverages: directors and officers individual coverage, company indemnification coverage, company liability coverage, and investigative costs coverage. The Policy is a declining balance policy. There is no dispute that the Policy was in effect from September 29, 2009 to September 29, 2010.

An adversary proceeding, Adv. Pro. No. 10-80143-dd, was commenced September 29, 2010, alleging breach of fiduciary duty and negligence by certain directors and officers of Debtor. A Motion for Withdrawal of Reference and Motion to Stay Adversary Proceeding were filed December 1, 2010, and this Court granted the Motion to Stay Adversary Proceeding on January 21, 2011. The District Court granted the Motion for Withdrawal of Reference on March 21, 2011. The Bankruptcy Court's docket for the adversary proceeding was closed on April 25, 2011. Movants request relief from the automatic stay so that Insurer can advance proceeds to Movants to pay Movants' defense costs resulting from the proceeding now before the District Court.

## CONCLUSIONS OF LAW

Movants argue that the policy proceeds are not property of the estate. In the alternative, Movants argue that even if the proceeds are property of the estate, cause exists for lifting the automatic stay. Trustee responds that the proceeds are property of the estate and additionally, that Movants' Motion should be denied.

## I.   Property of the Estate

The automatic stay under 11 U.S.C. 362 is imposed on the date the bankruptcy petition is filed and with limited exceptions set forth in section 362(b), prevents, among other things, the commencement or continuation of any action designed to collect property of the estate.  Section 541(a)(1) defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case."   The scope of this definition is broad, and is intended to include "all kinds of property, including tangible or intangible property."  *In re Baltimore Marine Indus.*, 476 F.3d 238, 240 (4th Cir. 2007); *In re CyberMedica, Inc.*, 280 B.R. 12, 15 (Bankr. D. Mass. 2002) (quoting S. Rep. No. 95-989, 95th Cong., 1st Sess. 82 (1978)).

While the majority view is that insurance policies qualify as property of the estate, courts differ in their treatment of insurance proceeds.  *CyberMedica*, 280 B.R. at 16.  *See also In re Air S. Airlines, Inc.*, Nos. 97-07229-W, 99-80037-W, 1999 WL 33486098, at *5 (Bankr. D.S.C. Nov. 19, 1999) (quoting *Houston v. Edgeworth (In re Edgeworth),* 993 F.2d 51, 55 (5th Cir. 1993)). Whether proceeds of a directors and officers liability policy are property of a debtor's bankruptcy estate should be analyzed in light of the facts of the particular case.  *CyberMedica*, 280 B.R. at 16.  *See also In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010) ("Cases determining whether the proceeds of a liability insurance policy are property of the estate are controlled by the language and scope of the specific policies at issue.").   However, most courts require, as a starting point, a debtor to have a direct interest in the proceeds in order for proceeds to qualify as property of the estate.  *CyberMedica*, 280 B.R. at 16.  *See also Downey Fin. Corp.*, 428 B.R. at 603 ("[W]hen the liability insurance policy only provides direct coverage to the directors and officers, courts generally hold that the proceeds are not property of the estate."); *In re Petters Co., Inc.*, 419 B.R. 369, 376 (Bankr. D. Minn. 2009) ("[W]hen a policy

provides coverage only to directors and officers, courts will generally rule that the proceeds are not property of the estate.") (quoting *In re World Health Alternatives, Inc.*, 369 B.R. 805, 810 (Bankr. D. Del. 2007)); *In re Laminate Kingdom, LLC*, No. 07-10279-BKC-AJC, 2008 WL 1766637, at *2 (Bankr. S.D. Fla. Mar. 13, 2008) ("Typically, the proceeds of a directors and officers liability insurance policy are not considered property of a bankruptcy estate."); *In re World Health Alternatives, Inc.*, 369 B.R. 805, 810 (Bankr. D. Del. 2007) (citing *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 512 (Bankr. D. Del 2004)).

If both the debtor and the directors and officers have direct interests in the proceeds, the proper result becomes less clear. Several courts have stated the standard in this situation is "'the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution.'" *Downey Fin. Corp.*, 428 B.R. at 603 (quoting *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 512 (Bankr. D. Del. 2004)). *See also Petters Co.*, 419 B.R. at 377 (explaining the reasoning for including cash proceeds in the bankruptcy estate, stating that when defense costs of other insureds exhaust policy limits, the estate is increasingly exposed to third-party claims and will be unable to collect insurance proceeds to satisfy any claims of the debtor); *Laminate Kingdom*, 2008 WL 1766637, at *3 (citing *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 512 (Bankr. D. Del. 2004)); *World Health Alternatives*, 369 B.R. at 810 ("When a policy covers the debtor and its directors and officers, and there is risk that payment of proceeds to the directors and officers will result in insufficient coverage of the debtor, then the proceeds are property of the estate and any attempts to obtain the proceeds are prohibited under the automatic stay.") (citing *In re Allied Digital Techs. Corp.,* 306 B.R. 505, 511 (Bankr. D. Del. 2004)).    The test has also been articulated differently, as "whether 'the debtor's estate is worth more with [the proceeds] then

[sic] without them.'" *CyberMedica*, 280 B.R. at 17 (quoting *Minoco Group of Cos., Ltd. v. First State Underwriters Agency of New Engl. Reins. Corp. (In re Minoco Group of Cos., Ltd.)*, 799 F.2d 517, 519 (9th Cir. 1986)). If the debtor's coverage is limited to indemnification coverage, then some courts have found that policy proceeds are not property of the estate if "indemnification 'either has not occurred, is hypothetical, or speculative.'" *World Health Alternatives*, 369 B.R. at 810 (quoting *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 512 (Bankr. D. Del. 2004); *Adelphia Commc'ns. Corp. v. Associated Elec. & Gas Ins. Servs., Ltd. (In re Adelphia Commc'ns. Corp.)*, 302 B.R. 439, 448 (Bankr. S.D.N.Y. 2003)).

Debtor appears to have an interest in the Policy. The Policy provides for an aggregate limit of $5,000,000 per policy year, to be allocated to directors and officers individual coverage, as well as both company indemnification and company liability coverages. If proceeds are not paid to Defendants to satisfy their defense costs, no funds will flow to Debtor, in the absence of any claims. However, this policy is a declining balance policy, meaning that any defense costs paid for through the Policy will reduce the amount available to pay any claims of Debtor. If the Movants' defense costs exhaust the policy limit, then Debtor could be forced to use other assets of its bankruptcy estate to satisfy any potential claims. Under these circumstances, it appears that the Policy meets the standard articulated above, and the insurance proceeds constitute property of the estate.

## II. Relief from the Automatic Stay

Movants state in their Motion that they are entitled to relief from stay because Debtor would suffer no harm if the stay is lifted, while they would suffer irreparable harm if it is not. Trustee responds that the proceeds are property of the estate and that Movants have no right to receive insurance proceeds to satisfy their defense costs because the ultimate effect would be the

same as Debtor indemnifying Movants for the costs of defending against Debtor's claims. Trustee also states in her Objection that Movants' counsel has a conflict of interest in representing Movants because Debtor paid Movants' counsel about $50,000 in legal fees shortly prior to the bankruptcy filing.

Section 362(d)(1) provides, "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – for cause, including the lack of adequate protection of an interest in property of such party in interest." The Bankruptcy Code does not define "cause." Instead, courts should look at the case-specific facts and the totality of the circumstances in order to determine whether sufficient cause exists to grant relief from the automatic stay. *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992); *Downey Fin. Corp.*, 428 B.R. at 608–09 (quoting *In re The SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007); *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997); *In re Cont'l Airlines, Inc.*, 152 B.R. 420, 424 (D. Del. 1993)). Hearings on motions for relief from stay are summary in character. *Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 219 (4th Cir. 1994). Whether to grant relief from stay is within the discretion of the bankruptcy judge. *Robbins*, 964 F.2d at 345, *Laminate Kingdom*, 2008 WL 1766637, at *3 (citing *In re Dixie Broad, Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989)).

The Court finds cause exists to grant relief from stay. Courts faced with similar situations have commonly granted relief from stay to allow directors and officers to receive payment for their defense costs. *Allied Digital Techs.*, 306 B.R. at 513. *See also Laminate Kingdom*, 2008 WL 1766637, at *4 ("[N]umerous courts have granted relief from the automatic stay to permit the advancement of defense costs to a debtor's directors and officers – even

though the insurance policies also provided direct coverage to debtor."). Debtor purchased the

Policy for the purpose, in large part, of insulating its directors and officers from personal liability

for the costs they incurred in defending actions. "'D & O policies are obtained for the protection

of individual directors and officers . . . . in essence and at its core, a D & O policy remains a

safeguard of officer and director interests and not a vehicle for corporate protection.'" *Laminate*

*Kingdom*, 2008 WL 1766637, at *4 (quoting *In re First Central Fin. Corp.*, 238 B.R. 9, 16

(Bankr. E.D.N.Y. 1999)). Movants cannot now be prevented from using the Policy for its

intended purpose simply because Debtor wishes to save the policy limit for any potential claims

of its own.

Trustee complains that the lifting of the stay to allow Movants to receive proceeds to pay

their defense costs is improper because whatever is paid to Movants will reduce her recovery as

the plaintiff. In *Allied Digital Technologies*, the same argument was presented. In response, the

court stated:

> The Trustee's real concern is that payment of defense costs may affect his
> rights as a plaintiff seeking to *recover from* the D & O Policy rather than
> as a potential defendant seeking to be *protected by* the D & O Policy. In
> this way, Trustee is no different than any third party plaintiff suing
> defendants covered by a wasting policy. No one has suggested that such a
> plaintiff would be entitled to an order limiting the covered defendants'
> rights to reimbursement of their defense costs. The bottom line is that the
> Trustee seeks to protect the amount he may receive in his suit against the
> directors and officers while limiting coverage for the defense costs of the
> directors and officers. This is not what the directors and officers
> bargained for. In bringing the action against the directors and officers, the
> Trustee knew that the proceeds could be depleted by legal fees and he took
> that chance. The law does not support the Trustee's request to regulate
> defense costs.

*Allied Digital Techs.*, 306 B.R. at 513. *See also Laminate Kingdom*, 2008 WL 1766637, at *4.

This Court agrees wholeheartedly with the *Allied Digital* court's statement; Trustee's argument

fails. The Policy should be used for its intended purpose.

Trustee's contention that Movants' counsel has a conflict of interest in this case is not currently before the Court. Although Trustee included this allegation in her Objection to Defendants' Motion, at the time of the hearing on the Motion she had not filed any separate motion relating to the conflict of interest, nor had she filed an action seeking to recover the $50,000 payment. Because this is a summary proceeding, the Court cannot consider that issue at this time. If Trustee wishes to pursue that argument, she should bring an appropriate motion before the District Court, where this action is now currently pending. *See In re Arter & Hadden, LLP*, 335 B.R. 666, 674–75 (Bankr. N.D. Ohio 2005) (stating that Trustee's conflict of interest argument "should be considered only after properly placed before the Court, with notice and opportunity for hearing and briefing by all interested parties."). She may, as well, seek recovery of the payment in this Court.

As discussed above, because the Policy is a multi-coverage policy, providing corporate indemnity and corporate liability coverage in addition to D&O coverage, aspects of the policy, including policy proceeds, may be property of the estate. For this reason, Insurer must, in accordance with its standard practices, review fees paid under the defense costs provisions of the Policy to ensure that the costs actually relate only to the defense of the directors and officers, that the fees and expenses were actually incurred, and that those fees were necessary and reasonable. Insurer is only required to review these fees in accordance with its standard practices; this Order does not impose any additional duties on Insurer outside of its normal business practice, except that Insurer must, at least five (5) business days prior to disbursing any funds, notify the Trustee of the amount of defense costs being paid.[1] The Court also informs the recipients of any disbursed funds that the receipt of funds that are unreasonable or unnecessary or for services not

---

[1] *See HomeGold Financial, Inc., HomeGold, Inc., and Carolina Investors, Inc. v. Clarendon National Ins. Co., et al.*, Adv. Pro. No. 03-80361, Order re: Motions by Paul Banninger et al. to Lift the Automatic Stay, docket no. #104, at 4 (Bankr. D.S.C. Jan. 29, 2004).

actually rendered in the litigation currently pending in the District Court may be subject to disgorgement.

## CONCLUSION

Movants' Motion is granted.  The Court orders Insurer to undertake its standard review of any costs submitted by Movants and provide notice to Trustee of any disbursements at least five (5) business days prior to any distribution.  Insurer is ordered to only pay those defense costs that are reasonable and necessary and those costs that directly relate to Movants' defense.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**04/29/2011**



Entered: 04/29/2011

David R. Duncan
US Bankruptcy Judge
District of South Carolina